**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **DONALD D. GADDIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 18-CV-1729-SMY** |
| | ) | |
| **BRYAN J. DEMATTEI, CITY OF** | ) | |
| **MARION, DAWN TONDINI, DOROTHY** | ) | |
| **MCCOMBS, CAMERON DUNFORD,** | ) | |
| **LOGAN SPINKA, WILLIAM LANNON,** | ) | |
| **and CHARLES WINSTEAD,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**YANDLE, District Judge:**

Plaintiff Donald Gaddis filed the instant action pursuant to 42 U.S.C. § 1983, claiming his civil rights were violated when he was falsely arrested on October 20, 2017 by City of Marion, Illinois police officers Bryan DeMattei, Logan Spinka, and William Lannom. The arrest followed a dispute between Gaddis and his neighbor, Dorothy McCombs, and allegedly triggered by statements made by Charles Winstead, another neighbor, and his guest, Cameron Dunford. Gaddis asserts false arrest claims against DeMattei, Spinka, and Lannom (Count I) and McCombs, Dunford, and Winstead (Count III), a *Monell* claim against the City of Marion (Count II), and a request for injunctive relief against Defendant Dawn Tondini, the former Chief of Police for the City of Marion (Count IV).

Now pending before the Court are Gaddis' Motion for Summary Judgment as to Liability (Doc. 49), Defendant Tondini's Motion for Summary Judgment (Doc. 57), Defendants City of Marion, DeMattei, Lannom, and Spinka's Motion for Summary Judgment (Doc. 58), Defendants Dunford and McCombs' Motion for Summary Judgment (Doc. 59), and Gaddis' Motion to

Dismiss Defendant Winstead Without Prejudice (Doc. 65).  For the following reasons, Gaddis'
Motion for Summary Judgment is **DENIED**, Tondini's Motion for Summary Judgment is
**GRANTED**, the City of Marion, DeMattei, Lannom, and Spinka's Motion for Summary Judgment
is **GRANTED**, Dunford and McCombs' Motion for Summary Judgment is **GRANTED**, and
Gaddis' Motion to Dismiss is **GRANTED**.

## Factual Background

Donald Gaddis and Dorothy McCombs are next-door neighbors and reside on North
Highland Avenue in Marion, Illinois.  According to Gaddis, he trimmed a tree that was on
McCombs' property but which extended onto his property and placed the tree limbs back onto
McCombs' property (Doc. 58-7, p. 3).  Charles Winstead, who lives across the street, told
McCombs about Gaddis' actions (*Id.* 4).  McCombs asked Gaddis to pick up the branches, but
Gaddis did not respond (*Id.* 5).  Gaddis then went to Winstead's house, knocked on his door, and
saw Dunford (who he did not know) through the glass storm door (*Id.* 7).  Gaddis said nothing and
headed back to his house (*Id.* 9).  Winstead then approached Gaddis on the street with a rake in his
hand and asked him what he wanted.  Gaddis told him to mind his own business and walked back
to his house (*Id.* 10-11, 15).

Within 15 minutes, police officers, including Officer Spinka, arrived on the scene.  Officer
Spinka approached Gaddis and talked to him through his screen door about the tree branches (*Id.*
16-17).  As Gaddis was talking to Officer Spinka, Officer Lannom approached them and the three
of them had a discussion for 10 to 15 minutes about the events of the day (*Id.* 17-18).  At the same
time, Officer DeMattei spoke to Winstead and Dunford across the street (*Id.* 19).  DeMattei then
walked over to Gaddis' house, put his hand on the door handle and told him that he is going to be
arrested for disorderly conduct and that he should come out of his house or they would come in to

get him for resisting arrest (*Id*. 22-23).  Gaddis then exited his house and was arrested (*Id*. 23).

The Defendants offer a somewhat different account of the events.  According to Dunford, Gaddis was "pounding and pounding" on Winstead's door demanding that he come out and said, "come out you coward."  (Doc. 58-6, p. 16-17).  Dunford also recalls Gaddis calling him and Winstead "little girls", telling Winstead that he should have minded his own business, and stating repeatedly, "you want to go old man" (*Id*. 18, 21).  Gaddis was standing in Winstead's front yard or on the sidewalk and Winstead told him to get off his property (*Id*. 20).  Winstead and Dunford then went to the side of his house and sat in Dunford's truck.  At that point, McCombs, who had been standing in her yard across the street, told them that the police had been called (*Id*. 23-4).  Dunford relayed the above to a police officer who he had never seen before and told him that Gaddis threatened Winstead (*Id*. 28-9).

According to Winstead, Gaddis knocked on his door and said, "this was none of your business" (Doc. 62-1, p. 25).  Winstead then went outside with rake in hand and Gaddis said, "come on, come on" which Winstead took as a threat (*Id*.  26, 31, 52).  Thereafter, Winstead went about his business and Gaddis, after lingering in the street for a couple of minutes, went back to his house (*Id*. 33-4).  While Winstead was present when the police spoke to Dunford, he did not speak to the police officers (*Id*. 27).

McCombs testified that the issue with the tree limbs happened the night before Gaddis' arrest (Doc. 58-1, p. 8, 12-13).  She also testified that around 6:00 p.m. on the day Gaddis was arrested, he pounded on Winstead's door, told him to come out, "was being erratic and threatening and screaming," called him a coward, and "wanted to fight" Winstead (*Id*. 5-6).  She called the police because he was "out of control."  (*Id.* 9-10).  When the police arrived, Officer Baldwin (who is not a party to this lawsuit) told her that Gaddis would be arrested (*Id*. 18-19).  There is no

indication in the record that McCombs gave a statement to the police before Gaddis was arrested.

It is undisputed that upon arriving to the neighborhood, DeMattei spoke to Dunford (Doc. 58-1, p. 17).  DeMattei recalls that there was an issue between Gaddis and his neighbors and that he decided to arrest Gaddis for disorderly conduct because:

> He approached the neighbor's residence, knocked on their door, began calling them names, made statements to them, and based on what Mr. Gaddis had told Officer Lannom, at that point it was my decision to place him under arrest.

(*Id*. 22).  DeMattei does not recall any other details regarding the incident (*Id*. 18-19).

Spinka does not recall the details of the incident or Gaddis' arrest (Doc. 58-3).  However, both he and Lannom were on Gaddis' porch to keep eye contact with him, to make sure he was not threatening or dangerous, and to ensure he stayed in the vicinity because of the on-going investigation (Doc. 58-4, p. 12; Doc. 58-3, p. 10).

<u>Discussion</u>

**Motions for Summary Judgment**

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  The moving party is entitled to summary judgment where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  *Celotex,* 477 U.S. at 323.  If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986).  Any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party.  *Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir. 2004).

In order to prevail on a Fourth Amendment claim for false arrest, a plaintiff must establish

that he or she was arrested without probable cause. *Hurt v. Wise*, 880 F.3d 831, 841 (7th Cir. 2018). Probable cause for an arrest is an absolute defense to such a claim. *Hurt*, 880 F.3d at 841. The existence of probable cause is a question of law to be answered by the Court. *Beck v. State of Ohio*, 379 U.S. 89, 96 (1964).

"A police officer has probable cause to arrest when, at the moment the decision is made, the facts and circumstances within his knowledge, and of which he has reasonably trustworthy information would warrant a prudent person in believing that suspect has committed or was committing an offense." *Fleming v. Livingston Cty.*, 674 F.3d 874, 878-9 (7th Cir. 2012) (*quoting Qian v. Kautz*, 168 F.3d 949, 953 (7th Cir. 1999)). The officer's belief need not "be correct or even more likely true than false, so long as it is reasonable." *Fleming*, 674 F.3d at 879 (*quoting Qian*, 168 F.3d at 953).

The undisputed evidence in this case reveals that prior to Gaddis' arrest, Officer DeMattei had been informed that Gaddis was pounding on his neighbor's door and threatening him. Under Illinois law, a person commits disorderly conduct when he knowingly "[d]oes any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." 720 Ill.Comp.Stat. § 5/26-1(a)(1). And, "[a]n arrest for disorderly conduct is justified when the defendant directly harasses or threatens other people." *Reher v. Vivo*, 656 F.3d 772, 777 (7th Cir. 2011). *See In re D.W.,* 502 N.E.2d 419, 420–21 (Ill. App. Ct. 1986) (defendant's threat to "kick [the complainant's] ass" supported arrest for disorderly conduct). Therefore, based on the information provided to him, DeMattei had probable cause to arrest Gaddis for disorderly conduct. As such, Gaddis' false arrest claim against DeMattei, Spinka, and Lannon fails as a matter of law.

Gaddis also argues that Defendants unlawfully "seized" him when they stood on his porch and talked to him. It has long been the law that a police officer may, without a warrant, approach

a home, knock on the door, wait to be received, and engage in conversation until asked to leave. *Florida v. Jardines*, 569 U.S. 1, 8 (2013). There is no evidence that Gaddis asked Officers Spinka or Lannom to leave – the evidence instead reveals that he voluntarily engaged in conversation with the officers. Nevertheless, citing *U.S. v. Jerez*, 108 F.3d 684 (7th Cir. 1997), Gaddis argues that he was seized because he had no choice but to comply with the officers. In that case, however, the officers knocked on a motel room door at night for a full three minutes, knocked on the window and shined a light in the room, prior to the door being opened. The Seventh Circuit Court of Appeals found that "the deputies' persistence, in the face of the refusal to admit, transformed what began as an attempt to engage in a consensual encounter into an investigatory stop." *Id*. at 692.[1] The circumstances here are much different. Police officers were responding to a call for assistance, arrived at Gaddis door, and engaged in a consensual discussion. When the officers determined they had probable cause, he was asked to step out of his house to be arrested. No Fourth Amendment violation occurred under the circumstances.[2]

Gaddis' *Monell* claim is also subject to summary dismissal. Municipalities can be held liable under § 1983 for constitutional violations if the plaintiff can show that an official policy and/or unofficial custom caused the violations. *Id*. 436 U.S. at 690-1. But absent a viable constitutional claim against the police officers involved, a plaintiff may not proceed on a *Monell* claim. *Treece v. Hochstetler*, 213 F.3d 360, 364 (7th Cir. 2000). Accordingly, Defendant City of Marion is entitled to summary judgment on Count II.[3]

Finally, Defendants McCombs and Dunford maintain correctly that they cannot be held

---

[1] In addition, Plaintiff's reliance on *Payton v. New York*, 445 U.S. 573 (1980), is equally unavailing because "*Payton* prohibits only a warrantless *entry* into the home, not a policeman's use of his voice to convey a message of arrest from outside the home." *U.S. v. Berkowitz*, 927 F.2d 1376, 138 (7th Cir. 1991).

[2] Given this conclusion, it is not necessary for the Court to address Defendants' argument that they are entitled to qualified immunity.

[3] Gaddis' official capacity claim against Dawn Tondini for prospective injunctive relief (Count IV) must likewise be dismissed as it is grounded on his *Monell* claim. *See Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir. 1987).

liable for false arrest. Gaddis argues that Dunford gave false information to the police and McCombs "campaigned to have Gaddis arrested." Even if Dunford did give the police false or misleading information, merely giving false information to police officers is insufficient to support a false arrest claim. *Odorizzi v. A.O. Smith Corp.*, 452 F.2d 229 (7th Cir. 1971); *Butler v. Goldblatt Bros., Inc.*, 589 F.2d 323, 326 (7th Cir. 1978) (citing *Morris v. Faulkner*, 361 N.E.2d 112 (1977)). Moreover, DeMattei based his decision to arrest Gaddis, in part, on statements that Gaddis made to Lannom. And, the record is devoid of evidence that McCombs "campaigned" to have Gaddis arrested. McCombs and Dunford are therefore entitled to summary judgment with respect to Count III.

### Motion to Dismiss

Finally, Gaddis seeks to dismiss his claims against Winstead without prejudice, and Winstead does not object (Doc. 66). A plain reading of Federal Rule of Civil Procedure 41(a) suggests that dismissal under this rule should be used only to dismiss an entire action (rather than a particular claim against a particular defendant). *See Taylor v. Brown*, 787 F.3d 851, 857 (7th Cir. 2015) (Rule 41(a) is "limited to dismissal of an entire action" and Rule 15(a) is the proper vehicle for "adding or dropping parties and claims"). While the Court acknowledges the plain reading of the rule, it finds that allowing Plaintiff to dismiss his claims against Winstead pursuant to Rule 41(a)(2) is appropriate in this case. The motion will be granted.

### Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment as to Liability (Doc. 49) is **DENIED**, Defendant Tondini's Motion for Summary Judgment (Doc. 57) is **GRANTED**, Defendants City of Marion, DeMattei, Lannom, and Spinka's Motion for Summary Judgment (Doc. 58) is **GRANTED**, Defendants Dunford and McCombs' Motion for Summary Judgment

(Doc. 59) is **GRANTED**, and Plaintiff's Motion to Dismiss Defendant Winstead Without Prejudice (Doc. 65) is **GRANTED**.

The Clerk of Court id **DIRECTED** to enter judgment accordingly and to close the case.

**IT IS SO ORDERED.**

**DATED:  July 27, 2020**

**STACI M. YANDLE**
**United States District Judge**